**IN THE COURT OF APPEALS OF IOWA**

No. 14-0106
Filed March 12, 2014

**IN THE INTEREST OF A.E.,**
    **Minor Child,**

**M.R., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block, Associate Juvenile Judge.


A father appeals from the order terminating his parental rights. **AFFIRMED.**


Tammy L. Banning of Tammy L. Banning, P.L.C., Waterloo, for appellant.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Steven J. Halbach, Assistant County Attorney, for appellee.

Christopher M. Nydle of Gruhn Law Firm, Cedar Rapids, for mother.

Michael Lanigan, Waterloo, attorney and guardian ad litem for minor child.


Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**MCDONALD, J.**

A father appeals an order pursuant to Iowa Code section 232.116(1)(e), (h), and (*l*) (2013) terminating the parental rights between him and his child, A.E. The father does not challenge that the State proved by clear and convincing evidence statutory grounds supporting termination. Instead, he contends that the termination of his parental rights is not in the best interest of the child and that termination need not proceed because the child has been placed with a relative, his mother. The mother does not appeal the termination order. We affirm the termination order.

I.

We review de novo proceedings terminating parental rights. *See In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We give weight to the findings of the juvenile court, especially concerning the credibility of witnesses, but we are not bound by them. *See id.* at 480–81. While giving weight to the findings of the juvenile court, our obligation to review termination proceedings de novo means our review is not a rubber stamp of what has come before. We will thus uphold an order terminating parental rights only if there is clear and convincing evidence of grounds for termination. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.*

II.

Termination of parental rights under chapter 232 follows a three-step analysis.  *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010).  First, the court must determine if a ground for termination under section 232.116(1) has been established.  *See id.*  Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child.  *See id.*  Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should serve to preclude the termination of parental rights.  *See id.*

As previously stated, the father does not challenge that the State proved statutory grounds for termination pursuant to Iowa Code section 232.116(1) (e), (h), and (*l*).  To provide context, however, the statutory grounds include, in relevant part: the failure to maintain significant and meaningful contact with the child and no reasonable efforts to resume care of the child; the child cannot be returned to the custody of the parents because of the risk of harm; and the parent has a severe substance-related disorder and presents a danger to himself or others and his prognosis is such that the child cannot be returned to his custody within a reasonable period of time.  *See* Iowa Code § 232.116(1) (e), (h), and (*l*).

In making the determination of whether termination of parental rights is in the best interests of the child, the court must consider the relevant statutory factors.  *See* Iowa Code § 232.116(2).  Further,

> In seeking out those best interests, we look to the child's long-range as well as immediate interests. This requires considering what the future holds for the child if returned to the parents. When making this decision, we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future.

*In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (quoting *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997)).

There is no evidence indicating that deferring termination is in A.E.'s best interest. A.E. is one year of age. At the time of birth, blood cord testing showed the child tested positive for marijuana, methamphetamine, amphetamines, and cocaine. The child was removed from the home almost immediately because of domestic violence in the home, a lack of supervision, parental substance abuse, and the lack of a suitable residence. Since the time of removal, the father has not availed himself of reunification services. He has not regularly attended visitation with the child. He refused to comply with substance abuse treatment and repeatedly has tested positive for controlled substances on those few occasions he actually complied with drug testing requests. He has failed to complete services regarding domestic violence. During the time of removal, he was in and out of jail arising out of violent incidents with A.E.'s mother. Indeed, at the time of the termination hearing, he was in prison serving a sentence for domestic violence committed against the mother. He believes that he may be paroled later this year. At the termination hearing, the father appeared telephonically and summarized his relationship with A.E.: "Well, as of right now, I don't really have a close relationship with her because of the time that I've been

incarcerated for most of her life. So I really don't have a very close -- close bond with her."

At this tender age, it is in A.E.'s best interest that the father's rights be terminated so that the child can attain stability. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) ("It is simply not in the best interests of the children to continue to keep them in temporary foster homes while the natural parents get their lives together."); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("We do not gamble with the children's future by asking them to continuously wait for a stable biological parent, particularly at such tender ages."); *In re M.M.S.*, 502 N.W.2d 4, 7 (Iowa 1993) (rejecting father's claim that he had only limited opportunities to bond with child because of his incarceration and stating, "[i]n the first place it is he who is most responsible for his limited opportunities"); *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) ("Children simply cannot wait for responsible parenting. Parenting . . . must be constant, responsible, and reliable.").

The father contends that termination should not proceed because the child is placed with the father's mother, that is A.E.'s paternal grandmother, and the father can attempt reunification when he is released from prison. *See* Iowa Code § 232.116(3) (providing the court need not terminate the relationship if a "relative has legal custody of the child"). This provision is permissive and not mandatory. *See In re D.S.*, 806 N.W.2d 458, 474-75 (Iowa Ct. App. 2011). We conclude this statutory ground should not prevent termination of the father's parental rights under the facts and circumstances of this case. *See C.K.*, 558 N.W.2d at 174 ("An appropriate determination to terminate a parent-child relationship is not to

be countermanded by the ability and willingness of a family relative to take the child. The child's best interests always remain the first consideration."). The child has been in the placement and then custody of the paternal grandmother and has some stability in her life. The father has made no meaningful attempt to parent the child. There is no reason to believe that things will be different once he is released from prison.

The termination order is affirmed.

**AFFIRMED.**